Ralph S. Peoples
13919 North 146th Lane
Surprise, Arizona 85379
623-362-4170

FILED ___ LODGED
___ RECEIVED ___ COPY
APR 0 8 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph S. Peoples ) | Case no. |
| Planitiff, ) | CV 09-720-PHX-ROS |
| vs. ) | |
| ) | |
| The Bank of New York Mellon ~~formally known as The Bank of New York as successor Trustee to~~ JP Morgan Chase Bank, National Association as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II inc; Bear Stearns, ~~ALT-A Trust, Mortgage Pass Through Certificates Series 2005-07,~~ EMC Mortgage Corporation; Mortgage Electronic Registration Systems, inc; Quality Loan Service Corporation; John Does 1-1000; Jane Does 1-1000; ABC Corporations A-XX and XYZ Partnerships A-XX; its assignees and/or successors, ) ) ) ) ) ) ) ) ) ) ) ) ) | Complaint |
| Defendants ) | |

*RP*

**Jurisdiction**

Federal Question

**Complaint**

Plaintiff, for its complaint alleges as Follows:

Page 1

1.  Upon information and belief, Defendants named above are authorized to conduct business in the state of Arizona or are authorized by their employer(s), in respect to John Does 1-1000 & Jane Does 1-1000, to act as their employer's representative.

2.  JOHN DOES 1-100, JAN DOES 1-1000, ABC Corporations 1-XX and XYZ partnerships are names of fictitious individuals, corporations and partnerships and Plaintiff will request leave of the Court to insert the true and correct names of said individuals, corporations and partnership when and if they are learned. Upon information and belief, Defendants have caused events to occur in MARICOPA COUNTY, Arizona, out of which this complaint arises.

3.  With respect to Defendant **STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.** Plaintiff has reason to believe named Defendant has a direct or indirect financial interest in this matter by its business relationship(s) with one or more other named Defendants. Therefore Plaintiff seeks to preserve his right to subpoena records, call to testify and collect information to establish what this relationship is and how this relationship might have impacted Plaintiff's ability to work with Defendant EMC Mortgage Corporation, and/or other Defendants to avoid foreclosure.

4.  With respect to Defendant **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc.,** Plaintiff has reason to believe named Defendant has a direct or indirect financial interest in this matter by its business relationship(s) with one or more other named Defendants. Therefore Plaintiff seeks to preserve his right to subpoena records, call to testify and collect information to establish what this relationship is and how this relationship might have impacted Plaintiff's ability to work with Defendant EMC Mortgage Corporation, and/or other Defendants to avoid foreclosure.

5.	With respect to Defendant **BEAR STEARNS Inc,** Plaintiff has reason to believe named Defendant has a direct or indirect financial interest in this matter by its business relationship(s) with one or more other named Defendants. Therefore Plaintiff seeks to preserve his right to subpoena records, call to testify and collect information to establish what this relationship is and how this relationship might have impacted Plaintiff's ability to work with Defendant EMC Mortgage Corporation, and/or other Defendants to avoid foreclosure.

6.	With respect to Defendant **QUALITY LOAN SERVICE CORPORATION,** Plaintiff has reason to believe named Defendant has a direct or indirect financial interest in this matter by its business relationship(s) with one or more other named Defendants. Therefore Plaintiff seeks to preserve his right to subpoena records, call to testify and collect information to establish what this relationship is and how this relationship might have impacted Plaintiff's ability to work with Defendant EMC Mortgage Corporation, and/or other Defendants to avoid foreclosure.

7.	With respect to Defendant **BANK OF NEW YORK MELLON,** Plaintiff has reason to believe named Defendant has a direct or indirect financial interest in this matter by its business relationship(s) with one or more other named Defendants. Therefore Plaintiff seeks to preserve his right to subpoena records, call to testify and collect information to establish what this relationship is and how this relationship might have impacted Plaintiff's ability to work with Defendant EMC Mortgage Corporation, and/or other Defendants to avoid foreclosure.

8.	With respect to Defendant **JP MORGAN CHASE,** JP MORGAN CHASE is the parent company of **EMC MORTGAGE CORPORATION.**

9. On or about April 20, 2008 Plaintiff contacted Defendant **EMC MORTGAGE CORPORATION** to inform them of his financial difficulties and to ask them to work with him to temporarily lower is monthly mortgage payments. Defendant's response was to inform Plaintiff there was nothing they could do for him and he would need to keep making his full monthly payments.

10. On or about April 20, 2008 Plaintiff contacted **EMC MORTGAGE CORPORATION** a second time and explained his financial situation and his desire to temporarily lower his monthly payments. Defendant again told him there is nothing that can be done and that he needed to continue to make his full payments.

11. On or about April 24, 2008 Plaintiff contacted **EMC MORTGAGE CORPORATION** a third time and again Defendant refused to offer an alterative to making full payments.

12. On April 27, 2008 Plaintiff wrote letter to **EMC MORTGAGE CORPORATION** detailing his experiences with customer service and requesting their help. Defendant never responded to letter.

13. On or about May 3, 2008 Plaintiff contacted **EMC MORTGAGE CORPORATION** a forth time and again Defendant refused to offer an alternative to making full payments.

14. On or about May 12, 2008 Plaintiff received a collection call from **EMC MORTGAGE CORPORATION**. Plaintiff explained his numerous unsuccessful attempts to work with EMC to temporarily lower his payments. Defendant's response was to inform Plaintiff they were a separate department and that the collection calls would continue as long as their records indicated delinquent status.

15. Defendant **EMC MORTGAGE CORPORATION** collections department made between 10-15 automated collection calls 6-7 days a week for five months from blocked or restricted numbers to Plaintiff's phone, despite repeated requests by Plaintiff to stop, in violation of Section 806 of the FDCPA, U.S.C. §1692d.

16. On May 15, 2008 Plaintiff write a second letter to **EMC MORTGAGE CORPORATION** requesting they work with him and to stop harassing him with incessant collections calls. Defendant never responded and the collection calls continued.

17. Plaintiff from April 20, 2008 to September 14, 2008 placed 36 calls and write 10 letters to **EMC MORTGAGE CORPORATION** trying to resolve his delinquent status and to get the harassing and unwarranted collection calls to stop. Defendant refused to provide requested help, refused to offer any other option but full payment and never responded or acknowledged any of his letters.

18. On September 14, 2008 Plaintiff called Defendant **EMC MORTGAGE CORPORATION** and spoke to a customer service person. Plaintiff explained his situation and desire to bring his loan current and how EMC had refused to accept any payment other than a full payment. Defendant informs him his missed loan payments equaled $4,662.34. Defendant further states the home is in foreclosure and he would need to also pay attorney fees and associated costs and sign a loan modification agreement. Plaintiff requests proof of notification of home being in foreclosure, proof of attorney fees and associated cost being incurred and the amounts. Defendant states he does not have this information. Plaintiff questions why EMC refused to work with him and is now foreclosing on his home. Defendant has no response.

Plaintiff ask for an estimated cost and Defendant states between $1,500-$3,000. Plaintiff asks Defendant if paying the $4,664.34 plus two months ahead could get us beyond this. Defendant states the lawyer's fee had to be paid in order to stop the foreclosure. Defendant goes on to state that if Plaintiff agrees to modify the loan and send $1,500-$2,500 the foreclosure would be stopped. Plaintiff tells defendant it appears EMC is more concerned with collecting lawyer's fees than working with a customer to save a loan. Defendant goes on to question why Plaintiff would be willing to risk foreclosure by not agreeing to the terms. Plaintiff states he was not going to be coerced into agreeing to something he has no direct knowledge of and he would need to see this in writing. Plaintiff requests he be mailed this information. Defendant agreed to send the requested information. Plaintiff never received requested information.

19. On September 15, 2008 Plaintiff sent $4.662.34 to **EMC MORTGAGE CORPORATION.** Defendant returned the payment on September 16, 2008.

20. On September 23, 2008 Plaintiff called defendant **EMC MORTGAGE CORPORATION** to inquire why he had not received the requested information from September 14, 2008. Defendant claimed no knowledge of this.

21. Between September 23, 2008 and October 24, 2008 Plaintiff wrote 5 more letters and made 10 more calls to Defendant **EMC MORTGAGE CORPORATION.** Defendant repeatedly ignored Plaintiffs calls, routed calls to departments unable to help, acted rude, insulting and indifferent.

22. On October 24, 2008 Plaintiff received notice of Trustee sale attached to front door of home. Plaintiff called Defendant **EMC MORTGAGE CORPORATION** requesting once again help. Defendants were unwilling to help.

23. Plaintiff filed for bankruptcy protection to stop sale of home scheduled for November 24, 2008.

24. On December 13, 2008 Plaintiff contacted a third party to act on his behalf to contact **EMC MORTGAGE CORPORATION** to negotiate a settlement. Defendant **EMC MORTGAGE CORPORATION** obstructed their ability to effectively work with them on his behalf. Calls were not returned, information was not provided as requested and the conduct and attitudes were in many cases identical to Plaintiff's own experiences.

25. Between November 15, 2008 March 3, 2009 Plaintiff made 15 calls and wrote 7 letters. Defendant **EMC MORTGAGE CORPORATION** handled these calls poorly as they had handled most other calls the Plaintiff made to them over the past 12 months. Defendant also failed to respond to the letters.

26. Defendant **EMC MORTGAGE CORPORATION** conducted a Trustee sale of Plaintiff's home shortly after Plaintiff's bankruptcy petition was dropped. The sale date: February 19, 2009.

27. On March 3, 2009 Plaintiff contacted **EMC MORTGAGE CORPORATION** shortly after receiving a notice from a law firm inform him he had five days to vacate. Defendant **EMC MORTGAGE CORPORATION** acknowledged it had repurchased the home and was now the new owner. Defendant **EMC MORTGAGE CORPORATION** informs Plaintiff that do to Plaintiff's unwillingness to work with **EMC MORTGAGE**

Page 7

1  **CORPORATION,** EMC had no choice but to foreclose. Plaintiff informs Defendant **EMC MORTGAGE CORPORATION** that he did all he could to work with EMC in good faith and that EMC abandoned him, ignored him and acted in bad faith with both him and his authorized third party to resolve this issue. To this Defendant **EMC MORTGAGE CORPORATION** responds by accusing Plaintiff of making statements and threatening to do specific acts to avoid resolving this issue, and also claims these statements and threats were all on tape. Defendant **EMC MORTGAGE CORPORATION** also states, all my calls to them were recorded and they have it all on tape.

28. Plaintiff called, emailed and wrote letters to Defendant **JP MORGAN CHASE** pleading with them to intervene in getting their company **EMC MORTGAGE CORPORATION** to work with him. Defendant **JP MORGAN CHASE** claimed that although they were in fact the holder's of the Note and that **EMC MORTGAGE CORPORATION** was owned by them they lacked the ability to access **EMC MORTGAGE CORPORATION** computer systems and therefore could not help him.

29. It is Plaintiff's position that all the named and unnamed Defendants engaged in collusion, fraud, bad faith and other illegal acts with the express purpose to deny Plaintiff's rights to have a legally binding real estate contact honored.

30. Defendants **EMC MORTGAGE CORPORATION** and **JP MORGAN CHASE** specifically engaged in egregious conduct, and in the course of doing normal business placed polices and procedures in place designed for the express purpose of constructively making it impossible for Plaintiff to avoid foreclosure. This is and was nothing but a

revenue scheme and strategy designed to coerce and use fear to make money for themselves and a number of unnamed third parties. When the Plaintiff balked and demanded proof of fees, and wanted to modify his loan the Defendants **EMC MORTGAGE CORPORATION** and **JP MORGAN CHASE** abandoned their responsibility and obligations to Plaintiff. They simply ignored Plaintiff.

31. Defendants **EMC MORTGAGE CORPORATION** and **JP MORGAN CHASE** had little or no incentive to work with Plaintiff. With multiple revenue streams from side deals with third parties, the securitization and bundling of mortgages into mortgage backed securities, tax write-offs, 25 billion dollars in taxpayer funds from TARP, the ability to foreclosure on the Plaintiff property despite multiple good faith efforts to avoid this on the Plaintiff's part, and unregulated and unchecked accountability that allows Defendants simply to say and claim they suffered losses without proof. Under these conditions and circumstances Plaintiff's legal rights under a valid contact with Defendants were rendered worthless.

32. Plaintiff asks the Court to consider a fundamental underpinning of a real estate contact, the obligation created by the payment of consideration in the form of interest to the holder of the note. First and foremost Defendants **EMC MORTGAGE CORPORATION** and **JP MORGAN CHASE** had a legal obligation to protect the property from liability exposure. Defendants failed to do this by exposing the property to potential lawsuits by their revenue generating schemes designed to take properties and sell them to multiple entities as investments with the properties themselves as collateral With theses overlapping and conflicting interests in place anyone who purchased these investments and suffered harm have a right to claim an interest in the

property collateralized. By selling and packaging these mortgages Defendants have clouded the issue of clear title to the property and therefore raise the question of who in fact has ownerships rights to Plaintiff's property, and therefore the legal right to demand Plaintiff vacate his home. What the Defendants are in effect saying is the property can be and was used as collateral to secure investments, but this collateralization has no liability exposure and the Defendants retains all rights to the property. This position simply fails the reality test and is in direct violation of the legal obligations they had to the Plaintiff by contract.

33. Plaintiff asserts the only way clear and proper title rights by all the Defendants can be established is by an examination of all of the original loan documents, including the Note and Deed of Trust, and all the agreements, assignments and transfers etc. entered into by all the Defendants and other parties in respect to this property. Plaintiff's further asserts the bundling of mortgages and the resulting commingling of these assets voids the rights of the Defendants to claim full ownership, and therefore their rights are limited to what they can prove they own. Plaintiff asserts his rights to work with all parties with a legal interest in his home to resolve this issue and not just claimed owners.

34. By creating a conflict of interest where it was in the best interests of the Defendants, **EMC MORTGAGE CORPORATION** and **JP MORGAN CHASE** and not an obligation under a contract to the Plaintiff that determined their course of action. The Defendants were able to pursue self-interests and had the ability to obstruct and control the process by their position as the lender/servicer to ensure what they wanted

occurred. Plaintiff therefore was never going be able to resolve his payments issues with Defendants unless Plaintiff agreed to any terms and conditions they offered. This conflict and circumstance could not exist and would not exist if Defendants were not allowed to breach their part of a contract and then claim harm when the harm was in fact self-inflicted.

35. Defendants **EMC MORTGAGE CORPORATION** failed to use the actual interest rate under the terms of the loan to calculate the monthly payment. Interest rate on first reset of ARM as shown on rate change letter was 1.5% less than interest rate charged as shown on monthly statements. Defendants used the higher rate to calculate interest owed.

36. Defendants **EMC MORTGAGE CORPORATION** added fees to monthly statement without proper disclosure and in direct violation of the Truth In Lending laws.

## DEMAND

1. Enter an emergency injunction barring the Defendants from having the Plaintiff removed from his home or engaging in any other such acts

2. A jury trial

3. All legal costs incurred by Plaintiff

4. 180,000 in actual damages and award any other relief as the Court finds appropriate

Date: 4/8/09

Ralph S. Peoples
13919 North 146th Lane
Surprise, Arizona 85379
623-362-4170